GOVERNMENT
EXHIBIT

A

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| Carl Goldstein<br>3233 Dellwood Road<br>Cleveland Heights, Ohio 44118<br>Plaintiff, | ) ) ) ) ) | CASE NO.: CV-22-967683 |
| v. | ) ) | JUDGE: STEVEN GALL |
| The M Sherwin Living Trust<br>Aka Marion Sherwin (Sole Trustee)<br>3256 Dellwood Road<br>Cleveland Heights, Ohio 44118 | ) ) ) ) ) | **AMENDED COMPLAINT FOR<br>ABATEMENT OF PUBLIC<br>NUISANCE, INJUNCTION, AND<br>RECEIVERSHIP (R.C. 3767.41)** |
| And | ) ) | |
| The Unknown Spouse of Marion Sherwin<br>3256 Dellwood Road<br>Cleveland Heights, Ohio 44118 | ) ) ) ) | |
| And | ) ) | |
| The Unknown Heirs of Marion Sherwin<br>3256 Dellwood Road<br>Cleveland Heights, Ohio 44118 | ) ) ) ) | |
| And | ) ) | |
| The Secretary of Housing and Urban<br>Development<br>451 Seventh Street SW<br>Washington, DC 20410 | ) ) ) ) ) | |
| And | ) ) | |
| CITY OF CLEVELAND HEIGHTS<br>40 Severance Circle<br>Cleveland Heights, OH 44118 | ) ) ) ) | |
| And | ) ) | |
| TREASURER, CUYAHOGA COUNTY<br>2079 East Ninth Street<br>Cleveland, OH 44115 | ) ) ) ) | |

Defendants.

<u>**COMPLAINT FOR ABATEMENT OF PUBLIC NUISANCE,**
**INJUNCTION, AND RECEIVERSHIP**
**(R.C. 3767.41)**</u>

Now comes Plaintiff, Carl Goldstein, ("Plaintiff") to petition this Honorable Court for the declaration of a public nuisance as defined in Ohio Revised Code 3767.41(A)(2) ("R.C") as "a building that is a menace to the public health, welfare, or safety..." As described more thoroughly below, Plaintiff requests such remedial action as provided by R.C. 3767.41, including, but not limited to, an order to immediately abate the public nuisance, a permanent injunction, the appointment of a receiver, or any other relief the Court deems necessary to abate the public nuisance at (Permanent Parcel Number 687-11-089), and as more fully described in the legal description attached to the Preliminary Judicial Report ("PJR") attached hereto as **Exhibit A: Prelimary Judicial Report**. If Plaintiff receives a judgment for costs of nuisance abatement not paid by the owner it will execute against the property on its judgment lien under R.C 3767.41(I) or alternatively under R.C. 2329, et. seq.

For its complaint, Plaintiffs assert the following:

1. Plaintiff, Carl Goldstein is a "neighbor" of the Property within the meaning of R.C. 3767.41(A)(5) and 3767.41(B)(1)(a), as Plaintiff owns a neighboring property located at 3233 Dellwood Road, Cleveland Heights Ohio 44118. (Permanent Parcel Number 687-08-020) ("3233 Dellwood"), a property that is within 500 feet of the subject Property. Plaintiff's ownership interest was obtained on 7/24/2008 and was recorded in the Cuyahoga County Records as Instrument Number 200807240122, attached hereto and incorporated herein as **Exhibit B: Ownership Deed of 3233 Dellwood**. Therefore, because Plaintiff is the owner of 3233 Dellwood Road, Plaintiff is a "neighbor" of the Property within the meaning of R.C. 3767.41(A)(5) and 3767.41(B)(1)(a).

2.     Upon information and belief, Defendant and titled owner, M. Sherwin Living Trust took ownership of the property, 3256 Dellwood Road, Cleveland Heights, Ohio 44118. Evidence of title, consisting of a Preliminarily Judicial Report by Old Republic National Title Insurance Company, dated June 9, 2022, is attached hereto and incorporated herein and marked and referred to as Exhibit "A" for identification. The Deed that conveyed title to The M. Sherwin Living Trust is recorded in Cuyahoga County Records as Instrument Number 200712170093. The Deed is included in the Preliminary Judicial Report attached hereto as Exhibit A.   M Sherwin Living Trust has only one sole trustee, Marion Sherwin. It is believed that Ms. Sherwin is deceased, having passed away on 9/15/2020. See **Exhibit C: Obituary of Marion Sherwin.**

3.     Defendant, the unknown spouse of Marion Sherwin may have a claim or interest in real property due to an interest in her estate that may have transferred upon her death.

4.     Defendants, the unknown heirs of Marion Sherwin may have a claim or interest in real property due to an interest in her estate that may have transferred upon her death.

5.     Defendant, The Housing and Urban Development may have or claim to have some interest in the Property by virtue of an Assignment of Mortgage filed on 6/7/2021 as AFN 202106071021. See Exhibit A.

6.     Defendant, Cuyahoga County Treasurer, may have or claim to have some interest in real property that is subject of this action by virtue of delinquent property taxes and/or assessments upon the property.

7.     Defendant, City of Cleveland Heights, may have or claim to have some interest in real property that is subject of this action by virtue of code violations and utility assessments.

## PUBLIC NUISANCE UNDER R.C. 3767.41

6.     Plaintiff incorporates and restates the allegations and averments of Paragraphs 1 through 5 of the Complaint herein by this reference.

7.     The Property is a residential "building" as defined by R.C. 3767.41(A)(1).

8.     The Property is currently a public nuisance as defined by R.C. 3767.41(A)(2).

10.    The Property currently has multiple physical conditions that demonstrate its nuisance state, including overgrown weeds, damaged gutters and siding, chipped paint, dirty interior walls, and a cluttered interior. The property is unoccupied and has been abandoned Photographs demonstrating the current condition of the Property are attached hereto as **Exhibit D**.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

A.     Order Defendant to abate the public nuisance at the Property in accordance with the standard for abatement stated in R.C. 3767.41(A)(3);

B.     Permanently enjoin the Defendant, from maintaining the Property in such a manner so as to constitute a public nuisance;

C.     Direct all Defendants to set forth any claim, lien or interest in or upon said real property which he, she, or it may have and to show cause why a receiver should not be appointed, as provided in R.C. 3767.41;

D.     Order any Defendant wishing to take possession and abate the nuisance to file with the Court its construction plan and financing plan pursuant to R.C. 3767.41(c)(2).

E.     Prohibit any interested party from taking any legal action affecting the title to or possession of the Property without prior authorization of this Court pursuant to R.C. 1901.131.

F.    Authorize a construction expert, employed by Plaintiff, to enter the Property for the purposes of preparing a construction and financing plan in accordance with R.C. 3767.41(C)(3) for the repair of the Property and abatement of the public nuisance thereon;

G.    Appoint Plaintiff Greensong III, LLC receiver to take possession and control of the Property with the authority set forth in R.C. 3767.41(F), and such other authority as this Court deems necessary to abate the public nuisance by rehabilitation or demolition;

H.    Direct the Defendant to pay the cost of this proceeding;

I.    Declare the costs, fees and expenses incurred by the receiver to be the first lien upon the Property and any income therefrom, superior to any prior or subsequent liens, in accordance with R.C. 3767.41(H).

J.    Authorize the Court's receiver to execute on its lien pursuant to either R.C. 3767.41(I) or R.C. 2329 in order to deliver a marketable title free of all liens to a purchaser in a sale to be confirmed by the Court.

K.    For such other relief as may be provided under R.C. 3767.41 or as this Court deems just and equitable.

Respectfully submitted,

*Spyridon Sintsirmas*

Spyridon Sintsirmas (0088117)
Sintsirmas and Mueller Lpa Co
26361 Curtis Wright Parkway
Cleveland, Ohio 44143
P.: 440-554-9081
E.: ssintsirmas@sanimlaw.com
*Attorney for Plaintiff*
*Greensong III, LLC*

EXHIBIT A

PRELIMINARY JUDICIAL REPORT



## PRELIMINARY JUDICIAL REPORT

File No.: 2022-112PJR                                     PJR No.: PJR80792928

Guaranteed Party Name and Address:

To:     Greensong II, LLC

        2455 Lyndway Rd.

        Beachwood OH 44121

Pursuant to your request for a   Preliminary Judicial Report (hereinafter "the Report") for use in judicial proceedings, Old Republic National Title Insurance (hereinafter "the Company") hereby guarantees in an amount not to exceed $153,800.00 that it has examined the public records in Cuyahoga County, Ohio as to the land described in Schedule A, that the record title to the land is at the date hereof vested in the name Marion Sherwin, Trustee, or her successor in trust, under M. Sherwin Living Trust Dated October 4, 2007, filed December 17, 2007 and recorded in Instrument No. 200712170093, of the Cuyahoga County, Ohio Records and free from all encumbrances, liens or defects of record, except as shown in Schedule B.

This is a guarantee of the record title only and is made for the use and benefit of the Guaranteed Party and the purchaser at judicial sale thereunder and is subject to the Exclusions from Coverage, the Exceptions contained in Schedule B and the Conditions and Stipulations contained herein.

This Report shall not be valid or binding until it has been signed by either an authorized agent or representative of the Company and Schedules A and B have been attached hereto.

Effective Date:  June 9, 2022 at 12:00 AM

**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**
*A Stock Company*
*400 Second Avenue South, Minneapolis, Minnesota 55401*
*(612) 371-1111*

Issued By:
**Erie Title Barristers Group**

By: *Monica Russell*

*Authorized Officer or Agent*

By: *Mark A Bilbrey*  *President*

Attest: *Daniel Wold*  *Secretary*

---

File No.:  2022-112PJR                                    PJR No.:  PJR80792928

## PRELIMINARY JUDICIAL REPORT
### SCHEDULE A

Description of Land

See Exhibit A

OLD REPUBLIC NATIONAL TITLE INSURANCE

Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683 / Confirmation Nbr. 2789298 / CLJSZ

File No.: 2022-112PJR                                                    PJR No.: PJR80792928

## PRELIMINARY JUDICIAL REPORT
### SCHEDULE B

The matters shown below are exceptions to this Preliminary Judicial Report and the Company assumes no liability arising therefrom.

1.  This company has made no examination of the premises described herein for covenants, restrictions, declarations, reservations, limitations, conditions, agreements, easements, rights of way, leases, and oil and gas rights of record, if any.

2.  Mortgage granted to Marion Sherwin, trustee or her successor in trust under M. Sherwin Living Trust dated October 4, 2007 from Dollar Bank F.S.B., in the amount of $243,000.00, filed on November 26, 2014 at Cuyahoga Co., Instrument No. 201411260496.

    Assignment of Mortgage from Dollar Bank F.S.B., It's Successors and Assigns to Secretary of Housing and Urban Development, It's Successors and Assigns, filed June 7, 2021 at Cuyahoga County Instrument No. 202106071021.

3.  Mortgage granted to Marion Sherwin, trustee or her successor in Trust under M. Sherwin Living Trust dated October 4, 2007 from Secretary of Housing and Urban Development, in the amount of $243,000.00, filed on November 26, 2014, at Cuyahoga County Instrument No. 201411260497.

4.  The Cuyahoga County general real estate records for PPN 687-11-089 show that taxes for the first half of 2021 are paid in full. Taxes for the second half of 2021 and subsequent years are a lien but are not yet due and payable.

**OLD REPUBLIC NATIONAL TITLE INSURANCE**

Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683 / Confirmation Nbr. 2789298 / CLJSZ

File No.: 2022-112PJR                                                      PJR No.: PJR80792928

## CONDITIONS AND STIPULATIONS OF THIS PRELIMINARY JUDICIAL REPORT

### 1.   Definition of Terms

"Guaranteed Party": The party or parties named herein or the purchaser at judicial sale.

"Guaranteed Claimant": Guaranteed Party claiming loss or damage hereunder.

"Land": The land described specifically or by reference in Schedule A, and improvements affixed thereto, which by law constitute real property provided however the term "land" does not include any property beyond the lines of the area specifically described or referred to in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, lanes, ways or waterways.

"Public Records": Those records under state statute and, if a United States District Court resides in the county in which the Land is situated, the records of the clerk of the United States District Court, which impart constructive notice of matters relating to real property to purchasers for value without knowledge and which are required to be maintained in certain public offices in the county in which the land is situated.

### 2.   Determination of Liability

This Report together with any Final Judicial Report or any Supplement or Endorsement thereof, issued by the Company is the entire contract between the Guaranteed Party and the Company.

Any claim of monetary loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest guaranteed hereby or any action asserting such claim, shall be restricted to this Report.

### 3.   Liability of Company

This Report is a guarantee of the record title of the Land only, as disclosed by an examination of the Public Records herein defined.

### 4.   Notice of Claim to be given to Guaranteed Claimant

In case knowledge shall come to the Guaranteed Party of any lien, encumbrance, defect, or other claim of title guaranteed against and not excepted in this Report, whether in a legal proceeding or otherwise, the Guaranteed Party shall notify the Company within a reasonable time in writing and secure to the Company the right to oppose such proceeding or claim, or to remove said lien, encumbrance or defect at its own cost. Any action for the payment of any loss under this Report must be commenced within one year after the Guaranteed Party receives actual notice that they may be required to pay money or other compensation for a matter covered by this Report or actual notice someone claims an interest in the Land covered by this Report.

### 5.   Extent of Liability

The liability of the Company shall in no case exceed in all the amount stated herein and shall in all cases be limited to the actual loss, including but not limited to attorneys' fees and costs of defense, only of the Guaranteed Party. Any and all payments under this Report shall reduce the amount of this Report pro tanto and the Company's liability shall terminate when the total amount of the Report has been paid.

### 6.   Options to Pay or Otherwise Settle Claims; Termination of Liability

The Company in its sole discretion shall have the following options:

a)  To pay or tender to the Guaranteed Claimant the amount of the Report or the balance remaining thereof, less any attorneys' fees costs or expenses paid by the Company to the date of tender. If this option is exercised, all liability of the Company under this Report terminates including but not limited to any liability for attorneys' fees, or any costs of defense or prosecution of any litigation.

b)  To pay or otherwise settle with other parties for or in the name of the Guaranteed Claimant any claims guaranteed by this Report.

c)  To continue, re-open or initiate any judicial proceeding in order to adjudicate any claim covered by this Report. The Company shall have the right to select counsel of its choice (subject to the right of the Guaranteed Claimant to object for reasonable cause) to represent the Guaranteed Claimant and will not pay the fees of any other counsel.

d)  To pay or tender to the Guaranteed Claimant the difference between the value of the estate or interest as guaranteed and the value of the estate or interest subject to the defect, lien or encumbrance guaranteed against by this Report.

### 7.   Notices

All notices required to be given to the Company shall be given promptly and any statements in writing required to be furnished to the Company shall be addressed to Old Republic National Title Insurance, 400 Second Avenue South, Minneapolis, MN 55401

### EXCLUSIONS FROM COVERAGE

1   The Company assumes no liability under this Report for any loss, cost or damage resulting from any physical condition of the Land

2   The Company assumes no liability under this Report for any loss cost or damage resulting from any typographical clerical or other errors in the Public Records

3   The Company assumes no liability under the Report for matters affecting title subsequent to the date of this Report or the Final Judicial Report or any supplement thereto.

4   The Company assumes no liability under this Report for the proper form or execution of any pleadings or other documents to be filed in any judicial proceedings.

5   The Company assumes no liability under this Report for any loss cost or damage resulting from the failure to complete service on any parties shown in Schedule B of the Preliminary Judicial Report and the Final Judicial Report or any Supplemental Report issued thereto

Preliminary Judicial Report
Conditions and Stipulations

Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683 / Confirmation Nbr. 2789298 / CLEKM

File No.: 2022-112PJR

# PJR Extended Coverage Endorsement

Attached to and made a part of Preliminary Judicial Report No. PJR80792928

Issued By OLD REPUBLIC TITLE INSURANCE COMPANY

The above-referenced Preliminary Judicial Report is amended as follows:

1. Definition of Terms is amended as follows:

   "Guaranteed Party": All parties to the proceedings and the purchaser at judicial sale

5. Extent of Liability is amended to read as follows:

   The liability of the Company to any Guaranteed Claimant or Guaranteed Party shall in no case exceed in the aggregate the amount stated herein; however, expenditures for litigation costs and attorney's fees incurred in contesting a claim or reopening, continuing or initiating a judicial proceeding, shall not reduce the amount recoverable herein.

6. Options to Pay or Otherwise Settle Claims; Termination of Liability, subparagraphs (a) and (d) are amended to read as follows:

   a. To pay or tender to the Guaranteed Claimant the amount guaranteed under the Report or the balance remaining thereof. If this option is exercised, all liability of the Company under this Report terminates.

   d. To pay or tender to the Guaranteed Claimant the difference between the value of the estate or interest as guaranteed and the value of the estate or interest subject to the non-monetary defect or non-monetary encumbrance guaranteed against by this Report

This endorsement is made a part of the preliminary judicial report referred to above, and except as modified herein, is subject to the terms and provisions thereof.

Date: June 9, 2022

**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**
*A Stock Company*
*400 Second Avenue South, Minneapolis, Minnesota 55401*
*(612) 371-1111*

Issued By:
**Eric Title Barristers Group**

By: *Monica Russell*

_____

**General Counsel**

By *C Monroe*  President

Attest *Donald Wold*  Secretary

## EXHIBIT A

PERMANENT PARCEL NO. 687-11-089

Situated in the City of Cleveland Heights, County of Cuyahoga, State of Ohio:

and known as being Sublot No. 84 in Henry Caine's Lee Road Subdivision of part of original Warrensville Township Lot No. 3, as shown by the recorded plat in Volume 44 of Maps, Page 21 of Cuyahoga County Records, and being 50 feet front on the Southerly side of Dellwood Road, and extending back of equal width 160 feet deep, as appears by said plat, be the same more or less, but subject to all legal highways.

Property Address: 3256 Dellwood Rd., Cleveland OH 44118

This Legal Description Complies with
The Cuyahoga Transfer and
Conveyance Standards and is approved
for transfer.

JUN 2 7 /2022

Agent

CUYAHOGA COUNTY RECORDER
PATRICK J. OMALLEY — 2
DEED 12/17/2007 10:38:43 AM
**200712170093**

## GENERAL WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS, THAT I, MARION SHERWIN, a widow and not remarried, for valuable consideration paid, grant, with general warranty covenants, to MARION SHERWIN, TRUSTEE, OR HER SUCCESSOR IN TRUST, UNDER M. SHERWIN LIVING TRUST DATED OCTOBER 4, 2007, whose tax mailing address is 3256 Dellwood Road, Cleveland Heights, Ohio 44118, the real property which is situated in the City of Cleveland Heights, County of Cuyahoga, State of Ohio:

and known as being Sublot No. 84 in Henry Caine's Lee Road Subdivision of part of original Warrensville Township Lot No. 3, as shown by the recorded plat in Volume 44 of Maps, Page 21 of Cuyahoga County Records, and being 50 feet front on the Southerly side of Dellwood Road, and extending back of equal width 160 feet deep, as appears by said plat, be the same more or less, but subject to all legal highways.

Permanent Parcel No.: 687-11-089

Subject to taxes and assessments, both general and special, which are a lien but not yet due and payable, easements, restrictions, reservations, rights of way, and conditions of record.

Prior Instrument Reference: Volume 12707, Page 745 of Cuyahoga County Records.

EXECUTED this _13_ day of _December_, 2007.

_Marion Sherwin_
Marion Sherwin

STATE OF OHIO )
) SS:
COUNTY OF CUYAHOGA )

BEFORE ME, a Notary Public in and for said County and State, personally appeared MARION SHERWIN, who acknowledged that she did sign the foregoing instrument and that the same is her free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _Cleveland Hts_, Ohio, this _13th_ day of _December_, 2007.

Notary Public
My commission expires:

JEFFRY L. WEILER, Attorney At Law
Notary Public — State of Ohio
My commission has no expiration date.
Section 147.03 R.D.E.

This instrument prepared by:

Jeffry L. Weiler, Esq.
Benesch, Friedlander, Coplan & Aronoff LLP
Suite 2300
200 Public Square
Cleveland, Ohio 44114-2378
(216) 363-4551

Permanent  687-11-089
Parcel #

| | |
|---|---|
| Type Instrument: Trustee Ex | Date: 12/17/2007 10:32:00 A |
| Tax District #: 3110 | Tax List Year: 2007 |
| Grantor: Sherwin Marion | Land Use Code: 5100 |
| Grantee: Sherwin Marion Trustee | Land Value: 33,600 |
| Balance Assumed: $ 0.00 | Building Value: 110,500 |
| Total Consideration: $ 0.00 | Total Value: 144,100 |
| Conv. Fee Paid: $ 0.00 | Arms Length Sale: NO |
| Transfer Fee Paid: $ 0.50 | Rcpt: c-12172007-1 |
| Fee Paid by: CASH | Inst #: 324291 |
| Exempt Code: | Check # |

_Frank Russo_

CUYAHOGA COUNTY AUDITOR

| | |
|---|---|
| Primary Owner | Sherwin Marion Trustee |
| Property Address | 3256 Dellwood RD Cleveland Hts,OH 44118 |
| Tax Mailing Address | CORELOGIC 2500 WESTFIELD DR ELGIN, IL 60124 |
| Legal Description | 3 LEE RD 0084 ALL |
| Property Class | SINGLE FAMILY DWELLING |
| Parcel Number | 687-11-089 |
| Taxset | Cleveland Hts. |
| Tax Year | 2021 |

| Assessed Values | |
|---|---|
| Land Value | $11,830 |
| Building Value | $42,000 |
| Total Value | $53,830 |
| Homestead Value | $8,750 |

| Market Values | |
|---|---|
| Land Value | $33,800 |
| Building Value | $120,000 |
| Total Value | $153,800 |

| Flags | |
|---|---|
| Owner Occupancy Credit | Y |
| Homestead Reduction | Y |
| Foreclosure | N |
| Cert. Pending | N |
| Cert. Sold | N |
| Payment Plan | N |

| Half Year Charge Amounts | |
|---|---|
| Gross Tax | $5,473.17 |
| Less 920 Reduction | $2,359.68 |
| Sub Total | $3,113.49 |
| 10% Reduction Amount | $251.25 |
| Owner Occupancy Credit | $62.81 |
| Homestead Reduction Amount | $455.04 |
| Total Assessments | $313.98 |
| Half Year Net Taxes | $2,658.37 |

| Rates | |
|---|---|
| Full Rate | 203.35 |
| 920 Reduction Rate | .431137 |
| Effective Rate | 115.678274 |

| Escrow | |
|---|---|
| Escrow | Y |
| Payment Amount | $.00 |

| Tax Balance Summary | Charges | Payments | Balance Due |
|---|---|---|---|
| | $12,250.11 | $11,135.74 | $1,114.37 |

## 2021 (pay in 2022) Charge and Payment Detail

| Taxset | Charge Type | Charges | Payments | Balance Due |
|---|---|---|---|---|
| Cleveland Hts. | | | | |
| | December interest - 2021 | $208.92 | $208.92 | $.00 |
| | Prior year penalty - 2020 | $700.91 | $700.91 | $.00 |
| | Prior year tax - 2020 | $4,522.00 | $4,522.00 | $.00 |
| | DELQ BALANCE | $5,431.83 | $5,431.83 | $.00 |
| | 1st half penalty | $234.44 | $234.44 | $.00 |
| | 1st half tax | $2,344.39 | $2,344.39 | $.00 |
| | 1ST HALF BALANCE | $2,578.83 | $2,578.83 | $.00 |
| | 2nd half tax | $2,344.39 | $2,344.39 | $.00 |
| | 2ND HALF BALANCE | $2,344.39 | $2,344.39 | $.00 |
| M173123S-LANDFILL CLEVELAND HEIGHTS | | | | |
| | 1st half tax | $13.37 | $13.37 | $.00 |
| | 1st half SPA fee penalty | $.01 | $.01 | $.00 |
| | 1st half penalty | $1.34 | $1.34 | $.00 |
| | 1st half SPA fee | $.13 | $.13 | $.00 |
| | 1ST HALF BALANCE | $14.85 | $14.85 | $.00 |
| | 2nd half tax | $13.37 | $13.37 | $.00 |
| | 2nd half SPA fee | $.13 | $.13 | $.00 |
| | 2ND HALF BALANCE | $13.50 | $13.50 | $.00 |
| M203106B-STREET LIGHT FORESTRY CLEVE HT | | | | |
| | Prior year penalty - 2020 | $15.50 | $15.50 | $.00 |
| | Prior year SPA fee penalty - 2020 | $.16 | $.16 | $.00 |
| | Prior year SPA fee - 2020 | $1.00 | $1.00 | $.00 |
| | Prior year tax - 2020 | $100.00 | $100.00 | $.00 |
| | December SPA fee interest - 2021 | $.05 | $.05 | $.00 |
| | December interest - 2021 | $4.62 | $4.62 | $.00 |
| | DELQ BALANCE | $121.33 | $121.33 | $.00 |
| | 1st half tax | $50.00 | $50.00 | $.00 |
| | 1st half penalty | $5.00 | $5.00 | $.00 |
| | 1st half SPA fee penalty | $.05 | $.05 | $.00 |
| | 1st half SPA fee | $.50 | $.50 | $.00 |

|  | | Charges | Payments | Balance Due |
|---|---|---|---|---|
| | 1ST HALF BALANCE | $55.55 | $55.55 | $.00 |
| | 2nd half tax | $50.00 | $50.00 | $.00 |
| | 2nd half SPA fee | $.50 | $.50 | $.00 |
| | 2ND HALF BALANCE | $50.50 | $50.50 | $.00 |
| M173120Q-LOCAL SEWER CLEVELAND HEIGHTS | | | | |
| | 1st half penalty | $24.75 | $24.75 | $.00 |
| | 1st half tax | $247.50 | $247.50 | $.00 |
| | 1st half SPA fee | $2.48 | $2.48 | $.00 |
| | 1st half SPA fee penalty | $.25 | $.25 | $.00 |
| | 1ST HALF BALANCE | $274.98 | $274.98 | $.00 |
| | 2nd half tax | $247.50 | $247.50 | $.00 |
| | 2nd half SPA fee | $2.48 | $2.48 | $.00 |
| C170100S-DELQ STORMWATER CLEVELAND | | | | |
| | 2nd half tax | $18.21 | $.00 | $18.21 |
| | 2nd half SPA fee | $.18 | $.00 | $.18 |
| C170100T-DELINQUENT WASTEWATER CLEVELAN | | | | |
| | 2nd half SPA fee | $10.86 | $.00 | $10.86 |
| | 2nd half tax | $1,085.12 | $.00 | $1,085.12 |
| | 2ND HALF BALANCE | $1,095.98 | $.00 | $1,095.98 |

|  | Charges | Payments | Balance Due |
|---|---|---|---|
| Total Balance | $12,250.11 | $11,135.74 | $1,114.37 |

* Taxes are updated within the hour



**ERIE TITLE
BARRISTERS GROUP**
A Howard Hanna Company ■

6000 Parkland Blvd
Mayfield Heights, OH 44124
Phone 216-986-7600
Fax 216-986-7680

## Invoice

June 27, 2022

Greensong II, LLC
2455 Lyndway Rd.
Beachwood OH 44121
Attn: Ben Greenburg

| | |
|---|---|
| Permanent Parcel Number: | 687-11-089 |
| Order Number | 2022-112PJR |
| Owner: | Marion Sherwin, Trustee, or her successor in Trust, under M. Sherwin Living Trust Dated October 4, 2007 |
| Preliminary Judicial Report: | $809.00 |

CUYAHOGA COUNTY RECORDER
PATRICK J. OMALLEY - 2
DEED 12/17/2007 10:38:43 AM
**200712170093**

## GENERAL WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS, THAT I, MARION SHERWIN, a widow and not remarried, for valuable consideration paid, grant, with general warranty covenants, to MARION SHERWIN, TRUSTEE, OR HER SUCCESSOR IN TRUST, UNDER M. SHERWIN LIVING TRUST DATED OCTOBER 4, 2007, whose tax mailing address is 3256 Dellwood Road, Cleveland Heights, Ohio 44118, the real property which is situated in the City of Cleveland Heights, County of Cuyahoga, State of Ohio:

and known as being Sublot No. 84 in Henry Caine's Lee Road Subdivision of part of original Warrensville Township Lot No. 3, as shown by the recorded plat in Volume 44 of Maps, Page 21 of Cuyahoga County Records, and being 50 feet front on the Southerly side of Dellwood Road, and extending back of equal width 160 feet deep, as appears by said plat, be the same more or less, but subject to all legal highways.

Permanent Parcel No.: 687-11-089

Subject to taxes and assessments, both general and special, which are a lien but not yet due and payable, easements, restrictions, reservations, rights of way, and conditions of record.

Prior Instrument Reference: Volume 12707, Page 745 of Cuyahoga County Records.

EXECUTED this ___13___ day of ___December___, 2007.

_Marion Sherwin_
Marion Sherwin

STATE OF OHIO )
 ) SS:
COUNTY OF CUYAHOGA )

BEFORE ME, a Notary Public in and for said County and State, personally appeared MARION SHERWIN, who acknowledged that she did sign the foregoing instrument and that the same is her free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _Cleveland Hts_, Ohio, this _13th_ day of _December_, 2007.

Notary Public
My commission expires: _____

JEFFRY L. WEILER, Attorney At Law
Notary Public—State of Ohio
My commission has no expiration date.
Section 147.03 R.R.C.

This instrument prepared by:

Jeffry L. Weiler, Esq.
Benesch, Friedlander, Coplan & Aronoff LLP
Suite 2300
200 Public Square
Cleveland, Ohio 44114-2378
(216) 363-4551

Permanent    687-11-089
Parcel #

Type Instrument: Trustee Ex
Tax District #: 3110
Grantor: Sherwin Marion
Grantee: Sherwin Marion Trustee
Balance Assumed: $ 0.00
Total Consideration: $ 0.00
Conv. Fee Paid: $ 0.00
Transfer Fee Paid: $ 0.50
Fee Paid by: CASH
Exempt Code

Date: 12/17/2007 10:32:00 A
Tax L st Year   2007
Land Use Code: 5100
Land Value: 33,600
Building Value: 110,500
Total Value: 144,100
Arms Length Sale: NO
Rcpt: c-12172007-1
Inst #: 324291
Check #

Frank Russo
CUYAHOGA COUNTY AUDITOR

31196-2 Doc 1488320  Ver 1

Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683 / Confirmation Nbr. 2789298 / CLJSZ

Description: Cuyahoga,OH Assessor Map 687.11 Selection from page 1
Order: 1 Comment:



SCALE: 1"·100'

CLEVELAND HGTS. MAP 687

Description: Cuyahoga,OH Assessor Map 687.11 Page: 1 of 1
Order: 1 Comment:



Description: Cuyahoga,OH Plat Map 44.21 Page: 1 of 1
Order: 1 Comment:

CUYAHOGA COUNTY
OFFICE OF FISCAL OFFICER - 17
MORT 11/26/2014 2:56:33 PM
**201411260496**

_____ |Space Above This Line For Recording Data| _____

# OPEN-END MORTGAGE:
## ADJUSTABLE RATE HOME EQUITY CONVERSION MORTGAGE

**State of OHIO**

FHA Case No. **412-7977535-962**
Loan No. **DLLR01524**

THIS MORTGAGE ("Security Instrument") is given on **November 21, 2014**. The mortgagor is **Marion Sherwin, trustee or her successor in Trust under M. Sherwin Living Trust dated October 4, 2007**, whose address is **3256 Dellwood Road, Cleveland Heights, Ohio 44118** ("Borrower"). This Security Instrument is given to **Dollar Bank F.S.B.** , which is organized and existing under the laws of **Pennsylvania**, and whose address is **Three Gateway Center, Pittsburgh, PA 15222**("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Adjustable-Rate Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment (interest), and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **Two Hundred Forty Three Thousand Dollars and Zero Cents** (U.S. $243,000.00 ); (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including amounts described in (a), (b), and (c) above, if not due earlier, is due and payable on **November 24, 2069**. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in and being the same Property conveyed to Borrower by that certain _Deed_ recorded in Volume ✱ , Page ____ , of the _Fiscal_ Office in CUYAHOGA County, OHIO: ✱ Instrument # 200712170093

See legal description as **Exhibit A attached hereto and made a part hereof for all intents and purposes**

which has the address of
**3256 Dellwood Road, Cleveland Heights, Ohio 44118,** ("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, hazard insurance premiums, flood insurance premiums, ground rents, condominium fees, planned unit development fees, homeowner's association fees, and any other assessments that may be required by local or state law in a timely manner, and shall provide evidence of payment to Lender unless Lender pays property charges by witholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's Principal Residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's Principal Residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Principal Residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Non-Borrowing Spouse.** Borrower, N/A is married to N/A ("Non-Borrowing Spouse"), who is not a Borrower under the terms of the "Note," "Loan Agreement" or this Security Instrument.

10. **Grounds for Acceleration of Debt.**

(a) **Due and Payable - Death.**

(i) Except as provided in Paragraph 10(a)(ii), Lender may require immediate payment in full of all sums secured by this Security Instrument if a Borrower dies and the Property is not the Principal Residence of at least one surviving Borrower.

(ii) Lender shall defer the Due and Payable requirement under Paragraph 10(a)(i) above for any period of time ("Deferral Period") in which a Non-Borrowing Spouse identified in Paragraph 9 resides in the Property as [his/her] Principal Residence and all of the following conditions are, and continue to be, met:

a. Such Non-Borrowing Spouse remained the spouse of the identified Borrower for the duration of such Borrower's lifetime;

b. Such Non-Borrowing Spouse has occupied, and continues to occupy, the property securing the Note as [his/her] Principal Residence;

c. Such Non-Borrowing Spouse has established legal ownership or other ongoing legal right to remain in the property securing this Note;

d. All other obligations of the Borrower under the Note, the Loan Agreement and this Security Instrument continue to be satisfied; and

e. The Note is not eligible to be called due and payable for any other reason.

Should any of these conditions for deferral of Due and Payable Status not be met at any time, the deferral of the Due and Payable Status shall cease and the Note will become immediately due and payable in accordance with the terms of the Note.

(b) **Due and Payable - Sale.** Lender may require immediate payment in full of all sums secured by this Security Instrument if all of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property). A deferral of due and payable is not permitted when a Lender requires immediate payment in full under this paragraph.

(c) **Due and Payable with Secretary Approval.** - Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than 12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

A deferral of due and payable is not permitted when a Lender requires immediate payment in full under section 10(C).

**(d) Notice and Certification to Lender.** Borrower shall complete and provide to the Lender on an annual basis a certification, in a form prescribed by the Lender, stating whether the property remains the Borrower's Principal Residence and, if applicable, the principal residence of his or her Non-Borrowing Spouse. Where a Borrower has identified a Non-Borrowing Spouse in Paragraph 9, the Borrower shall also complete and provide to the Lender on an annual basis a Non-Borrowing Spouse certification, in a form prescribed by the Lender, certifying that all requirements for the application of a Deferral Period continue to apply and continue to be met. During a Deferral Period, the Borrower's annual certifications, required by this paragraph, must continue to be completed and provided to the Lender by the Non-Borrowing Spouse. The Borrower shall also notify Lender whenever any of the events listed in Paragraph 10 (b) and (c) occur.

**(e) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 10 (b) and (c). Lender shall not have the right to commence foreclosure until Borrower has had 30 days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed-in-lieu of foreclosure.

**(f) Notice to Secretary and Non-Borrowing Spouse.** Lender shall notify the Secretary and any Non-Borrowing Spouse identified in Paragraph 9 whenever any event listed in Paragraph 10 (b) and (c) occurs during a Deferral Period.

**(g) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 10. A trust shall not be considered an occupant or be considered as having a Principal Residence for purposes of this Paragraph 10.

**(h) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment-in-full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**11. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid

to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**12. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment-in-full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment-in-full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment-in-full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**13. Lien Status.**

**(a) Modification.**

Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 14(a) *and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b) Tax Deferral Programs.**

Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.**

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**14. Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**15. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**16. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**17. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice to a Non-Borrowing Spouse provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable

law requires use of another method. The notice shall be directed to the Property Address. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower, Lender, or Non-Borrowing Spouse when given as provided in this Paragraph 17.

**18. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**19. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**20. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**21. Foreclosure Procedure. If Lender requires immediate payment-in-full under Paragraph 10, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 21, including, but not limited to, costs of title evidence.**

**22. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**23. Adjustable-Rate Feature.** Under the Note, the initial stated interest rate of **2.813%** which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the average of interbank offered rates for one-year U.S. dollar denominated deposits in the London Market ("LIBOR"), as published in The Wall Street Journal ("Index"), rounded to three digits to the right of the decimal point, plus a margin. If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development. Lender will give Borrower notice of new index

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on **December 1, 2015** and **on that day of each succeeding year.** ("Change Date"). Change Date means each date on which the interest rate could change.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

The Calculated Interest Rate cannot be more than 2.0 percentage points higher or lower than the Existing Interest Rate, nor can it be more than 5.0 percentage points higher or lower than the Initial Interest Rate.

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**24. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**25. Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

**26. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower, as well as Loan Advances for interest, MIP, Servicing Fees, and other charges, shall be obligatory.

**27. Future Advances.** In addition to any other debt or obligation secured hereby, Borrower and Lender intend that this Security Instrument shall secure unpaid balances of loan advances that are made after this Security Instrument is delivered to the recorder for record. The maximum amount of unpaid loan indebtedness, exclusive of interest thereon, which may be outstanding at any time is _____ (U.S. $_____).

**28. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider          ☐ Planned Unit Development Rider

☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

*Marion Sherwin Trustee* (SEAL)                    11-21-14

Marion Sherwin, Trustee, or her successor in Trust, under the M.          Date
Sherwin Living Trust dated October 4, 2007, as amended

_____ [Space Below This Line For Acknowledgment] _____

State of OHIO
County of _Cuyahoga_

The foregoing instrument was acknowledged before me this _Nov 21st 2014_ (date),

by _Marion Sherwin_ (name of person acknowledged).

DEIRDRE E SLAVIK
Notary Public
In and for the State of Ohio
My Commission Expires
March 17th 2015

_____
(signature of person taking acknowledgment)

_____
(title or rank)

_____
(serial number, if any)

record and return to:

this instrument was prepared by:  _Dollar Bank, FSB_

**Loan Originator Organization**

Mortgage Loan Originator Organization:          **Dollar Bank F.S.B.**

Nationwide Mortgage Licensing system and Registry Identification Number:          **410342**

**Individual Loan Originator**

Mortgage Loan Originator:          **Ray Chartier**

Nationwide Mortgage Licensing system and Registry Identification Number:          **747855**

## EXHIBIT A

Exhibit A to the Mortgage made on November 21, 2014, by Marion Sherwin, trustee or her successor in Trust under M. Sherwin Living Trust dated October 4, 2007 ("Borrower") to Dollar Bank F.S.B. ("Lender"). The Property is located in the county of CUYAHOGA, state of Ohio, described as follows:

### Description of Property

Situated in the City of Cleveland Heights, County of Cuyahoga, State of Ohio:

And known as being Sublot No. 84 in Henry Caine's Lee Road Subdivision of part of original Warrensville Township Lot No. 3, as shown by the recorded plat in Volume 44 of Maps, Page 21 of Cuyahoga Records, as appears by said plat, be the same more or less.

> Flenniken Settlement
> Services, Inc.
> Order # 142435

## Inter Vivos Revocable Trust Rider

Definitions Used in this Rider.

(A)  "Revocable Trust."

M. Sherwin Living Trust dated October 4, 2007

(B)  "Revocable Trust Trustee(s)."

trustee(s) of the Revocable Trust.    Marion Sherwin

(C)  "Revocable Trust Settlor(s)."

Marion Sherwin

settlor(s), grantor(s), or trustor(s) of the Revocable Trust.

(D)  "Lender."

Dollar Bank, FSB

(E)  "Security Instrument."  The Deed of Trust, Mortgage or Security Deed and any riders thereto of the same date as this Rider given to secure the Note to Lender of the same date made by the Revocable Trust, the Revocable Trust Trustee(s) and the Revocable Trust Settlor(s) and any other natural persons signing such Note and covering the Property (as defined below).

(F)  "Property."  The property described in the Security Instrument and located at:

3256 Dellwood Rd.  Cleveland Heights, OH 44118
[Property Address]

THIS INTER VIVOS REVOCABLE TRUST RIDER is made  11/21/2014          , and is incorporated into and shall be deemed to amend and supplement the Security Instrument.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, the Revocable Trust Trustee(s), and the Revocable Trust Settlor(s) and the Lender further covenant and agree as follows:

A.  Inter Vivos Revocable Trust.

1.  Certification and Warranties of Revocable Trust Trustee(s).

The Revocable Trust Trustee(s) certify to Lender that the Revocable Trust is an inter vivos revocable trust for which the Revocable Trust Trustee(s) are holding full title to the Property as trustee(s).

The Revocable Trust Trustee(s) warrants to Lender that (i) the Revocable Trust is validly created under the laws of the State of   Ohio
(ii) the trust instrument creating the Revocable Trust is in full force and effect and there are no amendments or other modifications to the trust instrument affecting the revocability

Multistate Inter Vivos Revocable Trust Rider
VMP ®
Wolters Kluwer Financial Services  © 2005, 2010
VMP372R (1009).00
Page 1 of 4

of the Revocable Trust; (iii) the Property is located in the State Ohio
(iv) the Revocable Trust Trustee(s) have full power and authority as trustee(s) under the
trust instrument creating the Revocable Trust and under applicable law to execute the
Security Instrument, including this Rider; (v) the Revocable Trust Trustee(s) have executed
the Security Instrument, including this Rider, on behalf of the Revocable Trust; (vi) the
Revocable Trust Settlor(s) have executed the Security Instrument, including this Rider,
acknowledging all of the terms and conditions contained therein and agreeing to be bound
thereby; (vii) only the Revocable Trust Settlor(s) and the Revocable Trust Trustee(s) may
hold any power of direction over the Revocable Trust; (viii) only the Revocable Trust
Settlor(s) hold the power to direct the Trustee(s) in the management of the Property; (ix)
only the Revocable Trust Settlor(s) hold the power of revocation over the Revocable Trust;
and (x) the Revocable Trust Trustee(s) have not been notified of the existence or assertion
of any lien, encumbrance or claim against any beneficial interest in, or transfer of all or any
portion of any beneficial interest in or powers of direction over the Revocable Trust
Trustee(s) or the Revocable Trust, as the case may be, or power of revocation over the
Revocable Trust.

2.    NOTICE OF CHANGES TO REVOCABLE TRUST AND TRANSFER OF POWERS OVER
REVOCABLE TRUST TRUSTEE(S) OR REVOCABLE TRUST OR BOTH; NOTICE OF CHANGE OF
REVOCABLE TRUST TRUSTEE(S); NOTICE OF CHANGE OF OCCUPANCY OF THE PROPERTY;
NOTICE OF TRANSFER OF BENEFICIAL INTEREST IN REVOCABLE TRUST.
The Revocable Trust Trustee(s) shall provide timely notice to Lender promptly upon notice or
knowledge of any revocation or termination of the Revocable Trust, or of any change in the
holders of the powers of direction over the Revocable Trust Trustee(s) or the Revocable Trust,
as the case may be, or of any change in the holders of the power of revocation over the
Revocable Trust, or both, or of any change in the trustee(s) of the Revocable Trust (whether
such change is temporary or permanent), or of any change in the occupancy of the Property, or
of any sale, transfer, assignment or other disposition (whether by operation of law or
otherwise) of any beneficial interest in the Revocable Trust.

B.    Additional Borrower(s).

The term "Borrower" when used in the Security Instrument shall refer to the Revocable
Trust, the Revocable Trust Trustee(s) and the Revocable Trust Settlor(s), jointly and
severally. Each party signing this Rider below (whether by accepting and agreeing to the
terms and covenants contained herein or by acknowledging all of the terms and covenants
contained herein and agreeing to be bound thereby, or both) covenants and agrees that,
whether or not such party is named as "Borrower" on the first page of the Security
Instrument, each covenant and agreement and undertaking of "Borrower" in the Security
Instrument shall be such party's covenant and agreement and undertaking as "Borrower"
and shall be enforceable by Lender as if such party were named as "Borrower" in the
Security Instrument.

---

Multistate Inter Vivos Revocable Trust Rider
VMP ®
Wolters Kluwer Financial Services   © 2005, 2010

VMP372R (1009).00
Page 2 of 4

C.   Transfer of the Property or a Beneficial Interest in the Revocable Trust.

The Transfer of the Property or a Beneficial Interest in Borrower Covenant of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Revocable Trust.
If, without Lender's prior written consent, (i) all or any part of the Property or an interest in the Property is sold or transferred or (ii) there is a sale, transfer, assignment or other disposition of any beneficial interest in the Revocable Trust, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with the Notice Section within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, the Revocable Trust Trustee(s) accepts and agrees to the terms and covenants contained in this Inter Vivos Revocable Trust Rider.

Trustee(s)

*Marion Sherwin* ─Trustee

----Marion Sherwin, Trustee, or her successor in Trust, under the
M. Sherwin Living Trust dated October 4, 2007, as amended

Multistate Inter Vivos Revocable Trust Rider
VMP ®
Wolters Kluwer Financial Services  © 2005, 2010

VMP372R (1009).00
Page 3 of 4

BY SIGNING BELOW, the undersigned Revocable Trust Settlor(s) acknowledges all of the terms and covenants contained in this Inter Vivos Revocable Trust Rider and agrees to be bound thereby.

Settlor(s)

_____          _____

Marion Sherwin

_____          _____

Multistate Inter Vivos Revocable Trust Rider
VMP ®                                                                                           VMP-372R (1009).00
Wolters Kluwer Financial Services  © 2005, 2010                                                 Page 4 of 4

Cuyahoga County
Fiscal Office    3
6/7/2021 4:33:03 PM  0

**202106071021**

**Prepared By:**
CELINK/LAUREN ALLWARD
3900 Capital City Blvd
Lansing, MI 48906
**After Recording Return To:**DOC SOLUTIONS ATTN: REGINA MONTS / LORI LOWE 2316 SOUTHMORE
AVE PASADENA, TX 77502
Charles A. Brown & Associates, P.L.L.C. d/b/a DocSolution, Inc. did not prepare a title search of the
property encumbered by the security instrument described below.  The preparer of this document
makes no representation as to the status of the title, loan history, property use or zoning regulations
concerning described property herein assigned, transferred or conveyed nor any matter except the
validity of the form of this instrument.  Information herein was provided to preparer by Grantor/Grantee
and/or their agent.  No boundary survey was made at the time of this assignment, transfer or
conveyance.

Client Id:  CELINKMI/AOL
Loan #: 1184325-ER



## ASSIGNMENT OF MORTGAGE

**FHA Case Number: 4127977535***FOR VALUE RECEIVED*, **DOLLAR BANK
F.S.B.**, **ITS SUCCESSORS AND ASSIGNS,**whose address is 3 GATEWAY
CENTER, PITTSBURGH, PA 15222, does hereby assign and transfer to
**SECRETARY OF HOUSING AND URBAN DEVELOPMENT, ITS
SUCCESSORS AND ASSIGNS**, forever and without recourse,whose address
is 451 SEVENTH STREET SW, WASHINGTON DC 20410, all its right, title
and interest in and to the described Mortgage executed by **Marion Sherwin,
trustee or her successor in Trust under M. Sherwin Living Trust dated
October  4, 2007 to DOLLAR BANK F.S.B. for $243,000.00** dated
**11/21/2014** of record on **11/26/2014** at Document Number **201411260496**, in
the **CUYAHOGA** County Clerk's Office, State of **OHIO**.
Property Address: 3256 Dellwood ROAD, CLEVELAND HEIGHTS, OHIO
44118
Parcel: 687-11-089
Legal Description:  SEE ATTACHED EXHIBIT "A"

Executed this  3/29/2021

**DOLLAR BANK F.S.B. BY CELINK ACTING AS AGENT AND ATTORNEY-IN-FACT FOR**

By:  _____Cole Greene_____
Title:  __Assistant Secretary__

STATE OF ___Michigan___

COUNTY OF __Clinton__

Before me, the undersigned officer, on this day, personally appeared ___Cole Greene___ the ___Assistant Secretary___ of Celink acting as agent and attorney-in-fact for DOLLAR BANK F.S.B., ITS SUCCESSORS AND ASSIGNS, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal this  3/29/2021

Notary Public in and for the State of ___Michigan___
Notary's Printed Name:  __Dennis Green__
My Commission Expires:  __12/19/2025__

For $243,000.00 dated 11/21/2014

EXHIBIT A

Situated in the City of Cleveland Heights, County of Cuyahoga, State of Ohio:

And known as being Sublot No. 84 in Henry Caine's Lee Road Subdivision of part of original Warrensville Township Lot No. 3, as shown by the recorded plat in Volume 44 of Maps, Page 21 of Cuyahoga Records, as appears by said plat, be the same more or less.

CUYAHOGA COUNTY
OFFICE OF FISCAL OFFICER - 15
MORT 11/26/2014 2:56:33 PM

**201411260497**

_____ [Space Above This Line For Recording Data] _____

# OPEN-END MORTGAGE (SECOND):
## ADJUSTABLE RATE HOME EQUITY CONVERSION MORTGAGE

State of OHIO

FHA Case No. 412-7977535-962
Loan No. **DLLR01524**

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on **November 21, 2014**. The mortgagor is **Marion Sherwin, trustee or her successor in Trust under M. Sherwin Living Trust dated October 4, 2007,** whose address is **3256 Dellwood Road, Cleveland Heights, Ohio 44118** ("Borrower"). This Security Instrument is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, SW, Washington, DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Adjustable-Rate Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest at a rate subject to adjustment (interest), and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **Two Hundred Forty Three Thousand Dollars and Zero Cents** (U.S. **$243,000.00** ); (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note. The full debt, including amounts described in (a), (b), and (c) above, if not due earlier, is due and payable on **November 24, 2069**. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in and being the same Property conveyed to Borrower by that certain **Deed** _____ recorded in Volume **X** , Page _____, of the **Fiscal** Office in CUYAHOGA County, OHIO:

**Instrument # 200712170043**

See legal description as Exhibit A attached hereto and made a part hereof for all intents and purposes

which has the address of
**3256 Dellwood Road, Cleveland Heights, Ohio 44118**, ("Property Address")

Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683 / Confirmation Nbr. 2789298 / CLJSZ

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, hazard insurance premiums, flood insurance premiums, ground rents, condominium fees, planned unit development fees, homeowner's association fees, and any other assessments that may be required by local or state law in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument and then to the reduction of the indebtedness under the First Note and First Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument and the First Note and the First Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's

principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) and shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 13(c)

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument, and then to the reduction of the indebtedness under the First Note and First Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument and the First Note and First Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Non-Borrowing Spouse.** Borrower, N/A is married to N/A ("Non-Borrowing Spouse"), who is not a Borrower under the terms of the "Second Note," "Loan Agreement" or this Security Instrument.

**10. Grounds for Acceleration of Debt.**

    (a) **Due and Payable - Death.**

        (i) Except as provided in Paragraph 10(a)(ii), Lender may require immediate payment in full of all sums secured by this Security Instrument if a Borrower dies and the Property is not the Principal Residence of at least one surviving Borrower.

        (ii) Lender shall defer the Due and Payable requirement under Paragraph 10(a)(i) above for any period of time ("Deferral Period") in which a Non-Borrowing Spouse identified in Paragraph 9 resides in the Property as [his/her] Principal Residence and all of the following conditions are, and continue to be, met:

            a.  Such Non-Borrowing Spouse remained the spouse of the identified Borrower for the duration of such Borrower's lifetime;

            b.  Such Non-Borrowing Spouse has occupied, and continues to occupy, the property securing the Second Note as [his/her] Principal Residence;

            c.  Such Non-Borrowing Spouse has established legal ownership or other ongoing legal right to remain in the property securing the Second Note;

            d.  All other obligations of the Borrower under the Second Note, the Loan Agreement and this Security Instrument continue to be satisfied; and

            e.  The Second Note is not eligible to be called due and payable for any other reason.

        Should any of these conditions for deferral of Due and Payable status not be met at any time, the deferral of the Due and Payable status shall cease and the Second Note will become immediately Due and Payable in accordance with the terms of the Second Note.

**(b) Due and Payable - Sale.** Lender may require immediate payment in full of all sums secured by this Security Instrument if all of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property). A deferral of due and payable is not permitted when a Lender requires immediate payment in full under this Paragraph; or

**(c) Due and Payable with Secretary Approval.** - Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if.

    (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

    (ii) For a period of longer than 12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

    (iii) An obligation of the Borrower under this Security Instrument is not performed.

    A deferral of due and payable is not permitted when a Lender requires immediate payment in full under Paragraph 10(c).

**(d) Notice and Certification to Lender.** Borrower shall complete and provide to the Lender on an

annual basis a certification, in a form prescribed by the Lender, stating whether the property remains the Borrower's Principal Residence and, if applicable, the principal residence of his or her Non-Borrowing Spouse. Where a Borrower has identified a Non-Borrowing Spouse in paragraph 9, the Borrower shall also complete and provide to the Lender on an annual basis a Non-Borrowing Spouse certification, in a form prescribed by the Lender, certifying that all requirements for the application of a Deferral Period continue to apply and continue to be met. During a Deferral Period, the Borrower's annual certifications, required by this paragraph, must continue to be completed and provided to the Lender by the Non-Borrowing Spouse. The Borrower shall also notify Lender whenever any of the events listed in this Paragraph 10 (b)-(c) occur.

(e) **Notice to Borrower.** Lender shall notify the Borrower whenever the loan becomes due and payable under Paragraph 10 (b)-(c). Lender shall not have the right to commence foreclosure until Borrower has had 30 days after notice to either:

  (i) Correct the matter which resulted in the Security Instrument coming due and payable; or

  (ii) Pay the balance in full; or

  (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

  (iv) Provide the Lender with a deed-in-lieu of foreclosure.

(f) **Notice to Secretary and Non-Borrowing Spouse.** Lender shall notify the Secretary and any Non-Borrowing Spouse identified in Paragraph 9 whenever any event listed in Paragraph 10 (b) and (c) occurs during a Deferral Period.

(g) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 10. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 10.

11. **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

12. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment-in-full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment-in-full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment-in-full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

### 13. Lien Status.

#### (a) Modification.

Borrower agrees to extend this Security Instrument in accordance with this Paragraph 13(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the property is not encumbered by any liens (except the First Security Instrument described in Paragraph 14(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

#### (b) Tax Deferral Programs.

Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

#### (c) Prior Liens.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

### 14. Relationship to First Security Instrument.

(a) **Second Security Instrument**. In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

(b) **Relationship of First and Second Security Instruments**. Payments made by the Secretary shall not be included in the debt under the First Note unless:

(i) The First Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 20 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 14.

(e) **Restrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 20 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

**15. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**16. Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several

**17. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice to Non-Borrowing Spouse provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires another method. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 17.

**18. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

**19. Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**20. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not a assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 20, except as provided in the First Security Instrument .

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**21. Foreclosure Procedure. If Lender requires immediate payment-in-full under Paragraph 10, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 21, including, but not limited to, costs of title evidence.**

**22. Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

**23. Adjustable-Rate Feature**. Under the Note, the initial stated interest rate of **2.813%** which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the average of interbank offered rates for one-year U.S dollar denominated deposits in the London Market ("LIBOR"), as published in The Wall Street Journal ("Index") plus a margin. If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development. Lender will give Borrower notice of new index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on **December 1, 2015 and on that day of each succeeding year**. ("Change Date"). Change Date means each date on which the interest rate could change.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate")

The Calculated Interest Rate cannot be more than 2.0 percentage points higher or lower than the Existing Interest Rate, nor can it be more than 5.0 percentage points higher or lower than the Initial Interest Rate.

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**24. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**25. Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

**26. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower, as well as Loan Advances for interest, MIP, Servicing Fees, and other charges, shall be obligatory.

**27. Future Advances.** In addition to any other debt or obligation secured hereby, Borrower and Lender intend that this Security Instrument shall secure unpaid balances of loan advances that are made after this Security Instrument is delivered to the recorder for record. The maximum amount of unpaid loan indebtedness, exclusive of interest thereon, which may be outstanding at any time is _____ (U.S. $_____).

**28. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[ ] Condominium Rider         [ ] Planned Unit Development Rider

[ ] Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Marion Sherwin Trustee_ (SEAL)         _11-21-14_

Marion Sherwin, Trustee, or her successor in Trust, under the M.      Date
Sherwin Living Trust dated October 4, 2007, as amended

_____ [Space Below This Line For Acknowledgment] _____

State of OHIO
County of _Cuyahoga_

The foregoing instrument was acknowledged before me this _Nov 21st 2014_ (date),

by _Marion Sherunt_ (name of person acknowledged).

_Deirdre E Slavik_
(Signature of person taking acknowledgment)

DEIRDRE E SLAVIK
Notary Public
In and for the State of Ohio
My Commission Expires
March 17th 2015

_____
(Title or rank)

_____
(Serial number, if any)

Record and Return to:

This instrument was prepared by: _Dollar Bank FSB_

**Loan Originator Organization**

Mortgage Loan Originator Organization:     **Dollar Bank F.S.B.**

Nationwide Mortgage Licensing system and Registry Identification Number:     410342

**Individual Loan Originator**

Mortgage Loan Originator:     Ray Chartier

Nationwide Mortgage Licensing system and Registry Identification Number:     747855

## EXHIBIT A

Exhibit A to the Mortgage made on November 21, 2014, by Marion Sherwin, trustee or her successor in Trust under M. Sherwin Living Trust dated October 4, 2007 ("Borrower") to the Secretary of Housing and Urban Development, and whose address is 451 Seventh Street, S.W., Washington, D.C. 20410, ("Lender" or "Secretary"). The Property is located in the county of

### Description of Property

Situated in the City of Cleveland Heights, County of Cuyahoga, State of Ohio:

And known as being Sublot No. 84 in Henry Caine's Lee Road Subdivision of part of original Warrensville Township Lot No. 3, as shown by the recorded plat in Volume 44 of Maps, Page 21 of Cuyahoga Records, as appears by said plat, be the same more or less.

Flenniken Settlement
Services, Inc.
Order # 142435

# Inter Vivos Revocable Trust Rider

Definitions Used in this Rider.

(A)  "Revocable Trust."

M. Sherwin Living Trust dated October 4, 2007

(B)  "Revocable Trust Trustee(s)."

trustee(s) of the Revocable Trust. Marion Sherwin

(C)  "Revocable Trust Settlor(s)."

Marion Sherwin

settlor(s), grantor(s), or trustor(s) of the Revocable Trust

(D)  "Lender."

The Secretary of Housing and Urban Development

(E)  "Security Instrument."  The Deed of Trust, Mortgage or Security Deed and any riders thereto of the same date as this Rider given to secure the Note to Lender of the same date made by the Revocable Trust, the Revocable Trust Trustee(s) and the Revocable Trust Settlor(s) and any other natural persons signing such Note and covering the Property (as defined below).

(F)  "Property." The property described in the Security Instrument and located at:

3256 Dellwood Rd.  Cleveland Heights, OH 44118
[Property Address]

THIS INTER VIVOS REVOCABLE TRUST RIDER is made  11/21/2014        , and is incorporated into and shall be deemed to amend and supplement the Security Instrument.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, the Revocable Trust Trustee(s), and the Revocable Trust Settlor(s) and the Lender further covenant and agree as follows:

A.  Inter Vivos Revocable Trust.

1.   Certification and Warranties of Revocable Trust Trustee(s).
The Revocable Trust Trustee(s) certify to Lender that the Revocable Trust is an inter vivos revocable trust for which the Revocable Trust Trustee(s) are holding full title to the Property as trustee(s)

The Revocable Trust Trustee(s) warrants to Lender that (i) the Revocable Trust is validly created under the laws of the State of  Ohio
(ii) the trust instrument creating the Revocable Trust is in full force and effect and there are no amendments or other modifications to the trust instrument affecting the revocability

Multistate Inter Vivos Revocable Trust Rider
VMP ®
Wolters Kluwer Financial Services  © 2005, 2010

VMP373R (1005) 00
Page 1 of 4

of the Revocable Trust; (iii) the Property is located in the State Ohio (iv) the Revocable Trust Trustee(s) have full power and authority as trustee(s) under the trust instrument creating the Revocable Trust and under applicable law to execute the Security Instrument, including this Rider; (v) the Revocable Trust Trustee(s) have executed the Security Instrument, including this Rider, on behalf of the Revocable Trust; (vi) the Revocable Trust Settlor(s) have executed the Security Instrument, including this Rider, acknowledging all of the terms and conditions contained therein and agreeing to be bound thereby; (vii) only the Revocable Trust Settlor(s) and the Revocable Trust Trustee(s) may hold any power of direction over the Revocable Trust;  (viii) only the Revocable Trust Settlor(s) hold the power to direct the Trustee(s) in the management of the Property; (ix) only the Revocable Trust Settlor(s) hold the power of revocation over the Revocable Trust; and (x) the Revocable Trust Trustee(s) have not been notified of the existence or assertion of any lien, encumbrance or claim against any beneficial interest in, or transfer of all or any portion of any beneficial interest in or powers of direction over the Revocable Trust Trustee(s) or the Revocable Trust, as the case may be, or power of revocation over the Revocable Trust.

2. NOTICE OF CHANGES TO REVOCABLE TRUST AND TRANSFER OF POWERS OVER REVOCABLE TRUST TRUSTEE(S) OR REVOCABLE TRUST OR BOTH; NOTICE OF CHANGE OF REVOCABLE TRUST TRUSTEE(S); NOTICE OF CHANGE OF OCCUPANCY OF THE PROPERTY; NOTICE OF TRANSFER OF BENEFICIAL INTEREST IN REVOCABLE TRUST.

The Revocable Trust Trustee(s) shall provide timely notice to Lender promptly upon notice or knowledge of any revocation or termination of the Revocable Trust, or of any change in the holders of the powers of direction over the Revocable Trust Trustee(s) or the Revocable Trust, as the case may be, or of any change in the holders of the power of revocation over the Revocable Trust, or both, or of any change in the trustee(s) of the Revocable Trust (whether such change is temporary or permanent), or of any change in the occupancy of the Property, or of any sale, transfer, assignment or other disposition (whether by operation of law or otherwise) of any beneficial interest in the Revocable Trust.

B. Additional Borrower(s).

The term "Borrower" when used in the Security Instrument shall refer to the Revocable Trust, the Revocable Trust Trustee(s) and the Revocable Trust Settlor(s), jointly and severally. Each party signing this Rider below (whether by accepting and agreeing to the terms and covenants contained herein or by acknowledging all of the terms and covenants contained herein and agreeing to be bound thereby, or both) covenants and agrees that, whether or not such party is named as "Borrower" on the first page of the Security Instrument, each covenant and agreement and undertaking of "Borrower" in the Security Instrument shall be such party's covenant and agreement and undertaking as "Borrower" and shall be enforceable by Lender as if such party were named as "Borrower" in the Security Instrument.

Multistate Inter Vivos Revocable Trust Rider
VMP ®
Wolters Kluwer Financial Services  © 2005, 2010

VMP372R(1009)10t
Page 2 of 3

C.    Transfer of the Property or a Beneficial Interest in the Revocable Trust.

The Transfer of the Property or a Beneficial Interest in Borrower Covenant of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Revocable Trust.
If, without Lender's prior written consent, (i) all or any part of the Property or an interest in the Property is sold or transferred or (ii) there is a sale, transfer, assignment or other disposition of any beneficial interest in the Revocable Trust, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with the Notice Section within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, the Revocable Trust Trustee(s) accepts and agrees to the terms and covenants contained in this inter Vivos Revocable Trust Rider.

Trustee(s)

_Marion Sherwin_ Trustee
_____

---- Marion Sherwin, Trustee, or her successor in Trust, under the
      M. Sherwin Living Trust dated October 4, 2007, as amended

_____          _____

Multistate Inter Vivos Revocable Trust Rider
VMP ®
Wolters Kluwer Financial Services    © 2005, 2018

VMP372R (1809).00
Page 3 of 4

BY SIGNING BELOW, the undersigned Revocable Trust Settlor(s) acknowledges all of the terms and covenants contained in this Inter Vivos Revocable Trust Rider and agrees to be bound thereby.

Settlor(s)

_____          _____

Marion Sherwin

_____          _____

Multistate Inter Vivos Revocable Trust Rider
VMP ®                                                                VMP372R (1009).00
Wolters Kluwer Financial Services  © 2005, 2010                      Page 4 of 4

EXHIBIT B

GOLDSTEIN'S DEED OF 3233 DELLWOOD ROAD.

CLEVELAND, OHIO 44118

CUYAHOGA COUNTY RECORDER
LILLIAN J GREENE - 2
DEED 7/24/2008 10:57:22 AM

**200807240122**

**After Recording Mail To:**
Sovereign Title Agency, LLC
5603 Darrow Rd., Suite 200
Hudson, OH 44236

Permanent Parcel No. **687-08-02⁹**

## LIMITED WARRANTY DEED

**KNOWN ALL MEN BY THESE PRESENTS, Deutsche Bank National Trust Company, As Trustee of Argent Mortgage Securities, Inc. Asset Backed Pass Through Certificates, Series 2005-W3 Under The Pooling and Servicing Agreement Dated as of October 1, 2005,** GRANTOR(S).

For the sum of TEN AND NO/100 DOLLARS ($10.00) and other valuable consideration received to its full satisfaction of

**Carl Goldstein, a married man**, whose tax mailing address is 3426 Clarendon Road, Cleveland, OH 44118, GRANTEE(S),

DOES HEREBY give, grant, bargain, sell and convey with limited warranty covenants unto the said GRANTEE(S), his / her / their heirs and assigns, all of its right, title and interest in Auditor's Permanent Parcel No. **687-08-020**, and more particularly described as follows:

Situated in the City of Cleveland Heights, County of Cuyahoga and State of Ohio:

And known as being Sublot No. 6 in the Henry Caine's Lee Road Subdivision of part of Original Warrensville Township Lot No. 3, as shown by the recorded plat in Volume 44 of Maps, Page 21 of Cuyahoga County Records, and being 50 feet front on the Northerly side of Dellwood Road and extending back of equal width 160 feet, as appears by said plat, be the same more or less, but subject to all legal highways.

**Prior Deed Reference: Filed Sept. 13, 2007 as Instrument No. 200709130221**

MORE commonly known as: **3233 Dellwood Rd., Cleveland Heights, OH 44118**, together with all appurtenant rights, privileges and easements thereunto belonging (hereinafter referred to as the "Premises"),

SUBJECT TO (1) taxes and assessments which are a lien, but not yet due and payable and (2) any Restrictions, Conditions, Covenants, Rights, Rights of Way, and Easements now of record

TO HAVE AND TO HOLD the above granted and bargained premises, with the appurtenances thereof, unto the said GRANTEE(S), his / her / their heirs and assigns forever.

Sov. File No. 07006825

Loan #: 0082568999 REO #: 66374

Executed this __14th__ day of ___July___, 2008

**Deutsche Bank National Trust Company, As Trustee of Argent Mortgage Securities, Inc. Asset Backed Pass Through Certificates, Series 2005-W3 Under The Pooling and Servicing Agreement Dated as of October 1, 2005**
By: Citi Residential Lending, Inc., as Attorney in Fact

By: _____

Its: __Kimberley Falzbot, Vice President__

**STATE OF** Illinois        )
**COUNTY OF** Cook        )        ss

The foregoing instrument was acknowledged before me this __14th__ day of __July__, 2008, by __Kimberley Falzbot__, the __Vice President__ of Citi Residential Lending, **Inc., as Attorney in Fact for Deutsche Bank National Trust Company, As Trustee of Argent Mortgage Securities, Inc. Asset Backed Pass Through Certificates, Series 2005-W3 Under The Pooling and Servicing Agreement Dated as of October 1, 2005,** the Grantor in the foregoing deed.

**NOTARY STAMP/SEAL**

NOTARY PUBLIC
My Commission Expires: __11/27/11__

This instrument was prepared by:

```
OFFICIAL SEAL
OLGA KOMOVA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 11/27/11
```

**Martin I. Newman, Esq.**
**5603 Darrow Road, Ste. 200**
**Hudson, Ohio 44236**
**Phone 330-342-0625**

**\*\*\*POA filed in Cuyahoga Co. on Oct. 22, 2007 As Instrument No. 200710220938\*\*\***

Permanent   687-08-020
Parcel #

Type Instrument  Warranty Deed
Tax District #  3110
Grantor  DEUTSCHE BANK NATIONAL T
Grantee  GOLDSTEIN, CARL
Balance Assumed  $ 0.00
Total Consideration  $ 65,000.00
Conv. Fee Paid  $ 260.00
Transfer Fee Paid  $ 0.50
Fee Paid by  Sovereign Title
Exempt Code

Date  7/24/2008 10:41:00 AM
Tax List Year  2008
Land Use Code  5100
Land Value  33,600
Building Value  114,800
Total Value  148,400
Arms Length Sale  YES
Rcpt  F-07242008-4
Inst #  359164
Check #

*Frank Russo*
CUYAHOGA COUNTY AUDITOR

EXHIBIT C

OBITUARY OF MARION SHERWIN

5 28 '2', 5 43 PM                                        Marion Sherwin Obituary - Cleveland H     OH





**OBITUARY**

# *Marion Sherwin*

NOVEMBER 24, 1919 – SEPTEMBER 15, 2020



IN THE CARE OF

## Berkowitz-Kumin-Bookatz Memorial Chapel

Marion Sherwin (nee Hirsch) beloved wife of the late Ben. Loving mother of Allan Sherwin.
Carolyn (Dr. Edward) Gabelman, Edward (Debra) Sherwin and Sanford Sherwin. Devoted
grandmother of Ari (Tracy Turoff) Sherwin, Rafi Sherwin, Ronit (Rabbi David Komerofsky)
Sherwin, Ilana (Scott) Wolfson, Bridgette Sherwin, Benjamin Sherwin, Heather Gabelman.
Joel (Ashley) Gabelman, Michael (Diana) Gabelman, Kelly Sherwin. Great grandmother of 17.
Dear sister of the late Harry and Danny Hersh, Rose Glaser, Helen Yosowitz, Alice Needle.
Mindell Wien, Doris Smith and Myrtle Stafford.

Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683 / Confirmation Nbr. 2786298 / CLJSZ

Marion Sherwin Obituary - Cleveland H     , OH

Family graveside services will be held Thursday, September 17 at the Mt. Olive Cemetery.

Family requests no visitation.

Friends who wish may contribute to the Temple Israel, 432 30th St. NW, Canton, OH 44709 or charity of your choice.

To Zoom the services, please go to BKBMC.com. Scroll to Marion's obituary and click on it. Scroll to the bottom of the obituary and click on the tab that says Join Livestream

## DONATIONS

Temple Israel, 432 30th St. NW, Canton, OH 44709.

# *Past Services*

## THURSDAY, SEPTEMBER 17, 2020

## Marion Sherwin

# *In Memory Of*

## *Marion Sherwin*

 8        

Help tell the story of your loved one's unique life. Leave a memory or share a photo or video below to show your support.



 *1*

VIEW

⌂
▯   *Click to light a candle*

ADD A MEMORY

## ALL MEMORIES    FROM THE FAMILY

Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683 / Confirmation Nbr. 2789298 / CLJSZ

2/18/23, 5:43 PM                                    Marion Sherwin Obituary - Cleveland H...OH

## Monica Goodwin

*09/15/2021*

What a lady she was! They don't make them like Marion Sherwin!
She was so pleasant to be around and had a great sense of humor. Always
ready to hear or tell a joke. Proud of her family!
She is missed

 0

---

 ADD A COMMENT

## Monica and Allan Goodwin

*09/25/2020*

The end of an era! The epitome of a lady.
The Gabelman's were like family to us and we shared many holidays together.
Mrs Sherwin was part of those occasions and I enjoyed sitting next to her and
sharing many jokes and conversations. I remember her cheeky smile and her
sophisticated giggles. She was always immaculate with a complexion any
woman would have been envious of.
She stayed sharp and what I remember most was her love of family. She was
the matriarch and I know she will be missed but never forgotten.

 0

---

 ADD A COMMENT

## Mara and Joey Pollack

*09/17/2020*

Carolyn and family Joey and I were so sorry to hear about your mother. Our
prayers are with you with much love.

2:28 2:...4 14 PM                                    Marion Sherwin Obituary - Cleveland He... OH

 0

---

 ADD A COMMENT

## Richard Martin

*09/17/2020*

Carolyn, I remember meeting your mom at your home many years ago. My
recollection is of a highly energetic, vigorous, distinguished and attractive
lady. She has clearly contributed a lot to many lives.
You have Pat and my sympathies
Richard Martin.

 0

---

 ADD A COMMENT

## Chuck and Randi Wien

*09/17/2020*

We will miss Aunt Marion, the matriarch of the family. What a special aunt
with her smile and wonderful personality. We always enjoyed her company,
and asking her about our family's history, of which she had a great memory
and recollections, all the way back to her young childhood.
Randi and I were lucky to share her 100th birthday dinner with her, drive her
home after, and stay late at her home while we engaged in lots of
conversation about the family, and her personal history.
She always will be missed.
Chuck and Randi

 0

---

 ADD A COMMENT

https://www.dignitymemorial.com/obituaries/cleveland-heights-oh/marion-sherwin-9366623                                    5/8

Marion Sherwin Obituary - Cleveland H..., OH

## Michael Mendelevitz

*09/17/2020*

I remember her as a warm and generous person. She fed me often, when I stopped by the house or when she picked us up from Hebrew School. Sorry for your loss.

♡ 0

---

(+) ADD A COMMENT

## Jim and Jeri Widrich

*09/17/2020*

I was the one who did Mrs Sherwin's' hair for about 40 years! She was such a wonderful person and one of my favorite clients!We laughed and told jokes! She had such a good sense of humor! She loved coming into the salon on Saturday afternoon and then enjoyed going to a movie and out to eat with her sisters! When we moved to a different salon, she would come in on Friday's and then go out to eat with Sanford! She loved doing that so much! She told me it was the highlight of her week! Eventually, when the salon closed for good, I would do her hair at her house. She said it wasn't as fun as going to the salon but at least I was making her feel beautiful (like she already was!) I will miss those days and certainly miss Mrs. Sherwin. Rest In Peace ! ◾

♡ 0

---

(+) ADD A COMMENT



## From the Family

 0

(+) **ADD A COMMENT**

*Every Detail Remembered*™ | 

© 2023 SCI SHARED RESOURCES, LLC. ALL RIGHTS RESERVED

Do Not Sell or Share My Personal Information

This site is provided as a service of SCI Shared Resources, LLC. The Dignity Memorial brand name is used to identify a network of licensed funeral, cremation and cemetery providers that include affiliates of Service Corporation

2/28/23  5:41 PM

Marion Sherwin Obituary - Cleveland H... OH

International, 1929 Allen Parkway, Houston, Texas. With over 1,900 locations, Dignity Memorial providers proudly serve over 375,000 families a year.

EXHIBIT D

PHOTOGRAPHS OF 3233 DELLWOOD, CLEVELAND HEIGHTS, OHIO





Electronically Filed 03/01/2023 13 07 / COMPLAINT / CV 22 967693 / Confirmation Nbr 2789298 / CL/SZ



Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683 / Confirmation Nbr. 2789298 / CLJSZ



Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683 / Confirmation Nbr. 2789293 / CLJSZ









Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683





Filed 03/01/2023 13 07 / COMPLAINT / CV 22 967683 / Confirmation Nbr  2789298 / CLJSZ





Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683 / Confirmation Nbr. 2789298 / CLJSZ





Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683 / Confirmation Nbr. 2789298 / CLJSZ









Electronically Filed 03/01 3:0 / COMPLAINT / CV 22 967683 /





Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683 / Confirmation Nb... 98 / CLJSZ



Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 23 967683 / Confirmation Nbr. 2783258 / CLJSZ













Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 867683 / Confirmation Nbr.









Electronically Filed 01/31/2023 13:07 / COMPLAINT / CV 23 967683 / Confirmation Nbr. 2789298 / CLJSZ



Electronically Filed 03/01/2023



Electronically Filed 03/01/2023  / COMPLAINT / CV 22 987683 / Confirmation Nbr 9789298 / CLJSZ







Electronically Filed 03/01/2023 13:07 / COMPLAINT / CV 22 967683 / Confirmation Nbr  2789298 / CLJSZ



## THE COURT OF COMMON PLEAS, CIVIL DIVISION
### CUYAHOGA COUNTY, OHIO
Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

CARL GOLDSTEIN
Plaintiff

V.

M SHERWIN LIVING TRUST, ET. AL
Defendant

**CASE NO.** CV22967683

**JUDGE** STEVEN E GALL

# SUMMONS  SUMA  CM
Notice ID: 53282728

From:   CARL GOLDSTEIN  P1
3426 CLARENDON ROAD
CLEVELAND HEIGHTS OH 44118

Atty.:  SPYRIDON SINTSIRMAS
26361 CURTISS WRIGHT PARKWAY
CLEVELAND. OH 44143-0000

To:   U.S. ATTORNEY FOR THE NORTHEREN  D8
DISTRICT OF OHIO
801 WEST SUPERIOR AVENUE. SUITE 400
CLEVELAND OH 44113-0000

### NOTICE TO THE DEFENDANT:

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Amended Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**. you will lose valuable rights. The Court will decide the case in favor of the Plaintiff for the relief requested in the **Amended Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit. the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

**Date Sent:** 04/04/2023

By_____
Deputy

CMSN130